MOORE, Judge.
In these consolidated appeals, the Alabama Department of Public Health (“the Department”) appeals from three separate, but identical, judgments entered by the Bessemer Division of the Jefferson Circuit Court (“the circuit court”) that reversed three separate orders of the State Health Officer disqualifying Bessemer Meat/Southeastern Meat (“Bessemer Meat”), Sixth Avenue Meat and Fish Market, LLC (“Sixth Avenue”), and Third Avenue Meat and Fish Market (“Third Avenue”) from participating in the Women, Infants, and Children (“WIC”) program. We reverse the circuit court’s judgments.

Background

The United States Congress created the WIC program in 1966 primarily to provide supplemental dietary and nutritional aid to low-income pregnant, breast-feeding, and non-breast-feeding postpartum women and to infants and children up to age five who are found to be at nutritional risk. See 42 U.S.C. § 1786(a). The United States Department of Agriculture (“USDA”) issues cash grants to the various states to administer the WIC program. See generally 42 U.S.C. § 1786(c)(2); 7 C.F.R. § 246.1. The USDA requires appropriate state agencies to use a portion of those cash grants to deliver approved supplemental foods and nutritional aid to eligible participants. 42 U.S.C. § 1786(f)(ll).
The Department administers the WIC program for the State of Alabama. See Ala.Code 1975, § 22-12C-1 et seq. The Department has adopted a food-delivery system by which it issues “food instruments” to eligible participants that can be redeemed at authorized retail vendors for approved supplemental foods. See Ala. Admin. Code (Dep’t of Public Health), Rule 420-10-2-.05(l). The food instruments designate specific types and quantities of food items that the participant may purchase, i.e., “one gallon of whole milk.” The participant obtains the described food items at retail stores operated by an authorized WIC vendor and tenders the food instrument as a form of payment for the food items. To accept the food instrument, the vendor stamps the food instrument with the vendor’s identification number and fills in the total purchase price of the food items. The participant then signs the food instrument. The vendor deposits the food instrument into its bank account, and the vendor’s bank then presents the food instrument for payment at the Department’s “contract bank.” Id.
The Department assures that its authorized vendors are properly complying with the WIC program and redeeming the food instruments for the purchase of approved supplemental foods through a variety of measures, including monitoring, “compliance buys,” and inventory audits. See Ala. Admin. Code (Dep’t of Public Health), Rule 420-10-2-.05(5).
“An inventory audit is the official examination and documentation of a WIC vendor’s inventory, accounts, and records to determine whether the vendor has purchased sufficient quantities of supplemental foods to provide participants the quantities specified on the food instruments redeemed by the vendor during a given time period.”
*450 Rule 420-10-2-.05(5)(c). Amanda Martin, the director of Alabama’s WIC program, testified that, in an inventory audit, the Department “[essentially ... look[s] to see if [the vendors’] redemptions exceed the amount of inventory they have in the store.” An inventory audit consists of counting the inventory of specified WIC food products maintained by the vendor during the audit period and determining whether the WIC redemptions for those same products during the audit period correspond to the inventory count. If the WIC redemptions exceed the documented inventory count, the Department considers the vendor to be noncompliant with the WIC program.
Bessemer Meat, Sixth Avenue, and Third Avenue (“the vendors”) are authorized WIC vendors. Based on suspiciously high redemptions at the vendors’ retail stores, the Department conducted inventory audits at those sites from July 17, 2013, through September 17, 2013. On July 17, 2013, two Department investigators independently counted the inventory of different milk and infant-formula products present at the vendors’ stores and confirmed those counts. Upon reaching matching numbers, the investigators listed the quantity of each type of product, as well as each corresponding retail price for a unit of that product, on an inventory worksheet. That worksheet represented the starting inventory for the audit period.
During the audit period, as their inventory of the milk and infant-formula products was depleted due to sales, the vendors purchased additional units of the milk and infant-formula products. The Department requested the receipts of all such purchases from the vendors. The Department then added to the inventory count the units of milk and infant-formula products shown on the receipts received from each vendor to get a running count of each vendor’s inventory. The Department then recounted the inventory at the vendors’ stores on September 17, 2013, and subtracted that inventory count from the running inventory count. The final total represented the entire inventory for the designated products in the audit period.
The Department then added up the WIC food instruments redeemed at the vendors’ stores during the relevant period. The Department gathered that information mainly from their banking system but also included the food instruments maintained at the vendors’ stores. The Department finally compared the inventory count to the redeemed food instruments. The Department determined that, for the designated period, it had paid the vendors for milk and infant-formula purchases exceeding the vendors’ documented inventory.
Federal and state regulations mandate that a vendor with “[a] pattern of claiming reimbursement for the sale of an amount of a specific WIC food item that exceeds the vendor’s documented inventory of that WIC food item for a specific period of time” shall be disqualified from the WIC program for three years. Ala. Admin. Code (Dep’t of Public Health), Rule 420-10—2—.05(5)(e)3.(ii); see 7 C.F.R. § 246.12 (Z)(l)(iii)(B).
“A pattern for the purpose of determining the vendor sanction for a violation of paragraph (5)(e)3.(ii) of this rule can be established during a single review if a vendor’s records indicate that, for a two-month audit period, the vendor’s re-demptions for a specific food item exceed its documented inventory.”
Ala. Admin. Code (Dep’t of Public Health), Rule 420—10—2—.05(5)(f). Based on its inventory audits, the Department notified the vendors that it was disqualifying them from participating in the WIC program for three years. The vendors each requested an administrative review before an inde *451 pendent hearing officer to appeal the disqualification. See 7 C.F.R. § 246.18 (a)(l)(i)(C); Ala. Admin.Code (Dep’t of Public Health), Rule 420-10-2-.06(a)(l). A hearing officer conducted an evidentiary-hearing on June 18 and June 18, 2014.
During the evidentiary hearing, the vendors introduced evidence indicating that the Department had admitted that it had made a calculation error in a 2012 inventory audit of Sixth Avenue. The vendors also showed that the Department had committed multiple errors in regard to the 2013 audits. The Department did not count the infant-formula inventory that was maintained by the owner of Third Avenue at her home. The Department also did not account for food instruments that the vendors secured at the owners’ homes. The Department omitted some purchases during the inventory-audit period despite having receipts for those purchases. The Department also had made some calculation, classification, and pricing mistakes regarding the inventory-purchase receipts. During the hearing, Martin adjusted the audit figures to account for most of the inaccuracies and omissions.
Following the hearing, the hearing officer issued three opinions. As to each vendor, the hearing officer adjusted the audit figures to account for the applicable audit errors, some of which the hearing officer attributed to the vendor’s record-keeping practices. In each instance, the hearing officer found that, even after correcting the errors and omissions, the reported WIC redemptions still exceeded the documented inventory. Specifically, the hearing officer concluded that Bessemer Meat’s redemptions exceeded its inventory in the amount of $8,212.45, that Third Avenue’s redemptions exceeded its inventory in the amount of $7,671.94, and that Sixth Avenue’s redemptions exceeded its inventory in the amount of $3,003.91. The hearing officer recommended that the Department’s decision to disqualify the vendors from participating in the WIC program should be upheld. After an administrative review of the record, the State Health Officer agreed with that recommendation and issued orders disqualifying the vendors.
The vendors appealed the State Health Officer’s orders to the circuit court. The vendors asserted that the determinations of the Department should be overturned because the Department did not have sufficient reliable evidence to sustain the vendors’ disqualifications. The circuit court found that the disqualifications had been based solely on the 2013 inventory audits and that those audits were wholly unreliable. The circuit court reversed the State Health Officer’s orders disqualifying the vendors. The Department timely appealed. This Court consolidated the appeals by an order dated October 2,2015.

Discussion

We review the judgments of the circuit court without any presumption of correctness, since that court was in no better position to review the orders of the State Health Officer than is this court. See Ex parte Williamson, 907 So.2d 407, 413 (Ala.2004). In reviewing the decisions of the State Health Officer, this court follows Ala.Code 1975, § 41-22-20(k), which provides, in pertinent part:
“Except where judicial review is by trial de novo, the agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute. The court may affirm the agency action or remand the case to the agency for taking additional testimony and evidence or for further proceedings. *452 The court may reverse or modify the decision or grant other appropriate relief from the agency action, equitable or legal, including declaratory relief, if the court finds that the agency action is due to be set aside or modified under standards set forth in appeal or review statutes applicable to that agency or if substantial rights of the petitioner have been prejudiced because the agency action is any one or more of the following:
[[Image here]]
“(6) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record.”
By that standard, this court must consider the evidence contained in the whole record and determine whether the record contains reliable, probative, and substantial evidence that sustains the orders of the State Health Officer. In making that decision, this court presumes that the agency decision is just and reasonable. Id.
The circuit court determined that the State Health Officer rested its decisions solely on the 2013 inventory audits. The record bears out that the Department based its initial decision to disqualify the vendors only on the 2013 inventory audits following an internal review by Martin. However, upon the vendors’ appeals, the Department appointed a hearing officer, who heard testimony regarding various errors and omissions committed by the Department in the audits. In its three orders, the hearing officer expressed concern for the reliability of the audits used by the Department, and encouraged the Department to take steps that would “drastically” minimize future errors. Nevertheless, the hearing officer concluded that it could decide the cases based on the testimony and other evidence adduced at the hearing, which corrected any errors and rectified any omissions committed during the audits. The hearing officer adjusted the audit figures based on that testimony, which it credited in its orders. Only after considering that evidence, and taking all reasonable inferences from that evidence in favor of the vendors, did the hearing officer determine that disqualifying shortfalls remained. The State Health Officer reviewed the hearing officer’s recommendations and the transcript of the hearing before reaching its separate determinations. The Department clearly based its decisions to disqualify the vendors on more than just the inventory audits, and the circuit court erred in concluding otherwise.
As the Department argues, the parties and the hearing officer strictly scrutinized the inventory audits at the hearing. The vendors fully seized their opportunity to point out any discrepancies in the audits. The vendors did not attack the methodology used by the Department in conducting its audits, apparently recognizing that the inventory audits, if properly performed, would yield consistent, verifiable results. Instead, the vendors questioned the accuracy of the figures inputted into the Department’s audit formulae; The vendors produced evidence tending to prove that the Department had used incorrect inventory data, especially in regard to the interim inventory purchases made by the vendors, based on misinformation, classification mistakes, omissions, and mathematical errors, By closely examining the audits, the vendors were able to isolate those omissions and errors in the data. The audit methodology was not so deficient that any other errors or omissions could not be detected.
Moreover, at the hearing, the vendors introduced evidence for the purpose of correcting the inaccuracies in the inventory audits. In its recommendations, the hearing officer accepted each of the vendors’ complaints as proven, revised the audit figures accordingly, and factored the cor *453 rected figures into its final equations.[1] The vendors do not contend that the hearing officer’s calculations, specifically based on the evidence introduced by the vendors, yielded incorrect results. Through its process, the hearing officer effectively negated any prejudice to the vendors arising from the audit errors made by the Department’s investigators.
Based on a review of the entirety of the record, we cannot conclude that the orders entered by the State Health Officer were “[cjlearly erroneous in view of the reliable, probative, and substantial evidence on the whole record.” § 41-22-20(k)(6). Therefore, we conclude that the circuit court erred in reversing the State Health Officer’s orders disqualifying the vendors from participating in the WIC program.

Conclusion

Based on the foregoing, we reverse the judgments of the circuit court and remand these cases for the entry of judgments affirming the orders of the State Health Officer.
2141063—REVERSED AND REMANDED WITH INSTRUCTIONS.
2141064—REVERSED AND REMANDED WITH INSTRUCTIONS.
2141065—REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur.

. Third Avenue’s owner testified that some infant-formula inventory had been purchased and stored at her residence during the audit period, but Third Avenue did not provide receipts for those purchases. The hearing officer determined that the Department was not responsible for failing to count that inventory, which was not documented. See Ala. Admin. Code (Dep’t of Public Health), Rule 420-10-2-.05(5)(f) (referencing “documented inventory”).